### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MONTANA

In re

**LARRY N CUTTING** and
**COLETTE M CUTTING**,

Case No.  **14-60309-7**

Debtors.

# MEMORANDUM of DECISION

At Butte in said District this 15th day of July, 2015.

In this Chapter 7 bankruptcy, after due notice, the Court held a hearing on June 23, 2015, in Billings on the Motion for Sanctions for Contempt of Court filed by Debtors on April 28, 2015, at docket no. 16.  Debtors appeared at the hearing in support of their motion; attorney Colette B. Davies of Billings, Montana represented them.  No party appeared in opposition to Debtors' motion.  Debtors' Exhibits 1 through 14 were admitted into evidence without objection. Debtors Colette Cutting and Larry ("Nick") Cutting testified.

BACKGROUND

Debtors commenced their voluntary chapter 7 bankruptcy case on March 26, 2014.  On their Schedule F filed that same date, Debtors list the following:

| | | |
|---|---|---|
| SCL Health System Hospital<br>Patient Payments<br>PO Box 912587<br>Denver, CO 80291-2587 | 2013<br>Guarantor Number: 1001003241 | $7,086.60 |
| St. Vincent Healthcare Physician<br>Billing<br>PO Box 912590<br>Denver, CO 80291-2590 | 2013<br>medical | $275.50 |

1

| | | |
|---|---|---|
| St. Vincent Physician Network<br>Dept Ch 14399<br>Palatine, IL 60055 | 2012<br>medical | $3,552.17 |
| St. Vincent Physician Network<br>PO Box 912590<br>Denver, CO 80291-2590 | 2014<br>medical | $460.01 |
| St. Vincent Physician Network<br>PO Box 912590<br>Denver, CO 80291-2590 | 2013<br>medical | $108.30 |

A notice of commencement of case was sent by first class mail on March 28, 2014, to the above creditors at the above addresses. The Court discharged Debtors' debts by order entered June 24, 2014. On June 26, 2014, a notice of Debtors' discharge was sent by first class mail to the above creditors at the above addresses.

After receiving their discharge, Debtor Colette Cutting received statements dated July 16, 2014, August 17, 2014, September 15, 2014, October 14, 2014, and November 12, 2014, from SCLHS of Palatine, Illinois and relating to Guarantor #: 1001003241 reflecting a balance due of $7,061.60 for account number 400149478. Debtors received "Final Notices" dated December 11, 2014, January 11, 2015, February 9, 2015, March 10, 2015, and April 18, 2015, indicating that $7,061.60 was due upon receipt and pending referral to a collection agency. The debt of $7,061.60 related to the delivery of one of Debtors' children, with an admission date of October 28, 2012, and a discharge date of October 30, 2012. Nick also received a Final Notice dated May 10, 2015, indicating that $293.75 was due on account 400151507 for laboratory work done on November 1, 2012.

On December 18, 2014, Amber Shanks of Bishop & Heenan sent SCL Health System Hospital, Patient Payments, PO Box 912587, Denver, CO 80291-2587 a letter advising that

2

Debtor Colette Cutting had received a statement for a debt that was included in Debtors' Chapter

7 bankruptcy.  Amber Shanks sent another letter to SCL Health System Hospital dated February

20, 2015, that reads:

> Our client, Colette Cutting, filed for bankruptcy on 3/26/14. She is still receiving
> harassing phone calls and statements regarding the above debt that was included
> in the bankruptcy.  This is our final attempt at contacting your facility to cease
> communications.  We will be forced to file a lawsuit on behalf of our client if the
> harassing calls do not cease immediately.

On March 30, 2015, John Heenan of Heenan & Bishop sent a similar letter to SCL Health

System Hospital.  When Debtors received no response to their letters, they filed their pending

request for sanctions on April 28, 2015, requesting compensatory and remedial damages, costs

and attorney's fees, and any other relief the Court deems appropriate, against SCL Health

Systems Hospital and St. Vincent Healthcare.  At the hearing, Debtors' counsel requested not

only attorney's fees and costs, but lost wages for Nick and emotional distress damages in the

amount of $102,350.00.  Counsel also requested that the Court award not less than $100,000.00

in punitive damages for SCL Health Systems Hospital and St. Vincent Healthcare's "reckless and

callous behavior."

Debtors testified that they have been working with a bank with the hopes of buying a

home.  The bank has issued Debtors a credit card and advised Debtors that if they keep the credit

card paid off for six months, and have nothing else reported on their credit, that Debtors will be

eligible for a home mortgage.  The various notices from St. Vincent Healthcare/SCL Health that

state that Debtors accounts are "past due and pending referral to a collection agency" have caused

Debtors to lose sleep, become teary, have stomachaches and fight with one another because they

fear if the delinquent accounts are referred to collection that Debtors will not be eligible for a

3

home loan.

APPLICABLE LAW and DISCUSSION

A discharge under 11 U.S.C. § 524(a)(2) "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." *In re Ellett*, 254 F.3d 1135, 1148 (9th Cir.2001), *cert. denied*, 534 U.S. 1127, 122 S.Ct. 1064, 151 L.Ed.2d 968 (2002). "A party who knowingly violates the discharge injunction [of § 524(a)(2) ] can be held in contempt under [§ ] 105(a) of the [B]ankruptcy [C]ode." *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1007 (9th Cir.2006) (citing *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir.2002), and *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir.2002)). In other words, a "willful" violation of the discharge injunction can be the basis for a finding of civil contempt, and the imposition of appropriate sanctions, under § 105(a). *In re Dyer*, 322 F.3d 1178, 1191 (9th Cir.2003). The court's contempt authority under § 105(a) is only a civil contempt authority and allows only for civil sanctions as the appropriate remedy. *Dyer*, 322 F.3d at 1192 (considering contempt sanctions in context of stay violation). "Civil penalties must either be compensatory or designed to coerce compliance. *Id*., (citing *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137–38 (9th Cir.2001)). For a discharge violation, "compensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction." *Walls*, 276 F.3d at 507.

To be subject to sanctions for violating the discharge injunction, the alleged contemnor's violation of the discharge injunction must be "willful." Under Ninth Circuit law, a violation of

4

the discharge injunction is willful when the alleged contemnor (1) knew that the discharge injunction applied, and (2) intended the actions that violated the discharge injunction. *In re Zilog, Inc.*, 450 F.3d at 1007; *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1390 (9th Cir. 1996).

The burden of proof on the issue of willfulness is clear and convincing evidence. *See In re Zilog, Inc.*, 450 F.3d at 1007; *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002) ("The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.").

The undisputed facts establish that SCL Health Systems Hospital and St. Vincent Healthcare violated the discharge injunction by knowingly seeking, between July 2014 and May 2015, the collection of prepetition debts from the Debtors of debts from which Debtors were discharged of personal liability on June 24, 2014. Based upon the above findings, Debtors are entitled to entry of an order holding SCL Health Systems Hospital and St. Vincent Healthcare in contempt for violating Debtors' discharge injunction.

The next question is what amount of sanctions are justified. As stated by the Ninth Circuit, an award of attorney's fees to the aggrieved debtor is an appropriate sanction for violating the discharge injunction. *See Walls*, 276 F.3d at 507. But when the court awards reasonable attorney's fees as a sanction, the court must consider two factors: "(1) what expenses or costs resulted from the violation and (2) what portion of those costs was reasonable, as opposed to costs that could have been mitigated." *In re Roman*, 283 B.R. 1, 12 (9th Cir. BAP 2002) (citation omitted) (internal quotation marks omitted).

In the case *sub judice*, attorneys Colette Davies and John Heenan filed declarations on

5

June 25, 2015, requesting attorney's fees and costs in the total amount of $11,970.00 (25.9 hours at $300.00 per hour, or $7,770.00 for Colette Davies and 14 hours at $300.00 per hour, or $4,200.00 for John Heenan). The declaration of Colette Davies is accompanied by a billing statement dated June 23, 2015, which details the work Colette Davies performed on behalf of Debtors between April 28, 2015, and June 23, 2015. The fees of $7,770.00 for the work performed by Colette Davies are approved.

John Heenan's declaration in not accompanied by any billing statements, but merely states he "expended 14 hours researching, writing letters, and drafting the present Motion for Sanctions." Colette Davies's billing statements suggests that she had "multiple discussions with Nick" regarding the notices from SCL Health Systems Hospital and St. Vincent Healthcare prior to April 28, 2015, and that she spent numerous hours researching the law regarding sanctions, punitive damages and applicable legal standards. The record also reflects that two of the three letters sent to SCL Health System Hospital on Debtors behalf were sent by Amber Shanks. The letter sent to SCL Health Systems Hospital dated March 30, 2015, and the motion for sanctions were signed by John Heenan. The motion for sanctions recites the facts of this case and requests that SCL Health Systems Hospital and St. Vincent Healthcare be held in contempt and sanctioned pursuant to 11 U.S.C. § 105(a), § 524(a)(2), and Fed. R. Bankr. P. 9020, but contains no citation to any case law. Based upon the record, it appears Colette Davies had multiple discussions with Nick and that she was involved with the motion for sanctions since the motion was filed on April 28, 2015. John Heenan, on the other hand, wrote one letter, and not "letters," as suggested by his declaration, and that he drafted the motion for sanctions. While John Heenan may have done research on the matter, it is impossible to ascertain whether his research is

6

duplicative of the research performed by Colette Davies. Given John Heenan's failure to file a billing statement that would enable the Court to determine whether his requested fees are reasonable, the Court will award one-half the fees requested by John Heenan, or $2,100.00.

Debtors also claim, and Nick testified, that he lost wages totaling $396.00 relating to preparation for and attending the sanction hearing. The Court will award Debtors $396.00 for Nick's lost wages.

Emotional distress damages are appropriate when a debtor "(1) suffer[s] significant harm, (2) clearly establish[es] the significant harm, and (3) demonstrate[s] a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." *Dawson v. Washington Mut. Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1149 (9th Cir. 2004). In *Dawson*, the Ninth Circuit further discussed in elaborate detail how a claimant could establish emotional distress damages, as follows:

- Corroborating medical evidence may be offered.

* * *

- Non-experts, such as family members, friends, or coworkers, may testify to manifestations of mental anguish and clearly establish that significant emotional harm occurred.

* * *

- In some cases significant emotional distress may be readily apparent even without corroborative evidence. For example, the violator may have engaged in egregious conduct. *See, e.g., Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 905 (Bankr. E.D.Pa. 1987) (awarding emotional distress damages, based on the debtor's testimony, when a creditor entered the debtor's home at night, doused the lights, and pretended to hold a gun to the debtor's head). Or, even if the violation of the automatic stay was not egregious, the circumstances may make it obvious that a reasonable person would suffer significant emotional harm. *See, e.g.,*

7

*United States v. Flynn (In re Flynn)*, 185 B.R. 89, 93 (S.D. Ga.1995) (affirming $5,000 award of emotional distress damages, with no mention of corroborating testimony, because "it is clear that appellee suffered emotional harm" when she was forced to cancel her son's birthday party because her checking account had been frozen, even though the stay violation was brief and not egregious).

*Id*. at 1149–50.

The Court observed Debtors' demeanor closely while each was testifying under oath and the Court finds that both Debtors are credible.  The Court finds and concludes that Debtors satisfied their burden of clearly establishing that they suffered significant harm, and they demonstrated a causal connection between that significant harm and the collection notices sent by SCL Health Systems Hospital and St. Vincent Healthcare after Debtors' discharge.

Debtors did not seek medical attention for their stress and did not have to take any type of medication to address their stress and anxiety, but the Court nevertheless finds that Debtors' suffered significant harm.  The Court finds that the emotional distress Debtors suffered as a result of SCL Health Systems Hospital and St. Vincent Healthcare's post-discharge collection efforts was distinct from the pressures inherent in the bankruptcy process.  Debtors were prepared for and weathered the bankruptcy process, and after performing their duties as a debtor, they anticipated the benefits of a fresh start.  The violations of Debtors' discharge by SCL Health Systems Hospital and St. Vincent Healthcare deprived Debtors of their fresh start, and instead caused Debtors unnecessary, unwarranted stress.

Even if a violation of the discharge injunction is not egregious, a debtor may recover emotional distress damages that arose from a discharge injunction and a debtor may establish emotional distress damages without corroborating evidence if the circumstances make it obvious "that a reasonable person would [have suffer[ed] significant emotional harm." *See Sternberg v*

8

*Johnston*, 595 F.3d 937, 943 n.1 (9ᵗʰ Cir. 2010) (quoting *Dawson*, 309 F.3d at 1149-51). In this

Court's view, the circumstances in the instant case make it obvious that a reasonable person

would have suffered significant emotional harm.

More recently, the Ninth Circuit Court of Appeals, in *In re Snowden*, 769 F.3d 651 (9ᵗʰ

Cir. 2014), awarded emotional distress damages in the amount of $12,000 for a creditor's

violation of the automatic stay. There, the offending creditor used an electronic funds transfer to

overdraw the debtor's bank account and made a series of harassing phone calls to the debtor at

the hospital where she worked, causing her panic and making her "out of her mind." In the

instant case, by contrast, the Court finds that the evidence of emotional distress warrants a

smaller award. Debtors claim in this case that they have lost sleep, have been teary and have had

stomachaches. The emotional damages caused by SCL Health Systems Hospital and St. Vincent

Healthcare's violation of the discharge injunction were less severe than the evidence of

emotional damages shown in *Snowden*. After consideration of the record, the Court awards

Debtors the sum of $100 for each violation of the discharge injunction, or $1,100.00, in

emotional distress damages. *See Snowden,* 769 F.3d at 656-57; *Dawson*, 390 F.3d at 1149.

Turning to the remainder of Debtors' sanction request, "punitive damages are not an

appropriate remedy for § 105(a) contempt proceedings, [but] 'relatively mild' noncompensatory

fines may be acceptable in some circumstances." *Dyer*, 344 F.3d at 1193–94. Such "relatively

mild" fines must be narrowly tailored "to the amount necessary for rule enforcement."

*Zambrano v. City of Tustin*, 885 F.2d 1473, 1479–80 (9ᵗʰ Cir.1989); *see also Dyer*, 322 F.3d at

1193–94 (reciting this standard, but leaving the question of what constitutes "serious" punitive

sanctions for another day). Debtors have not shown that the balance of their punitive damage

claim is necessary to coerce rule enforcement by SCL Health Systems Hospital or St. Vincent Healthcare.

In accordance with the foregoing, the Court will enter a separate order providing as follows:

IT IS ORDERED that Debtors' Motion for Sanctions for Contempt of Court filed on April 28, 2015, at docket no. 16, is granted; Debtors are awarded the sum of $11,366.00 ($9,870.00 for attorney's fees, $396.00 for lost wages and $1,100.00 for emotional distress) as a civil sanction against SCL Health Systems Hospital and St. Vincent Healthcare for their violation of Debtors' discharge; and SCL Health Systems Hospital and St. Vincent Healthcare shall immediately cease all further collection activities relating to the debts listed in Debtors' bankruptcy schedules.

IT IS FURTHER ORDERED that the Clerk of Court is directed to serve this Memorandum of Decision and Order at the addresses listed for SCL Health Systems Hospital and St. Vincent Healthcare in Debtors' schedules and also at the following addresses:

1233 North 30th Street, Billings, MT 59101,
2223 S. Shiloh Road, Billings, MT  59106, and
2750 Grand Avenue, Billings, MT 59102.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

10